(Surrogate's Court, St. Lawrence County. February, 1912.)

1. LIFE ESTATES (§ 17*)—IMPROVEMENTS—LIABILITY OF CORPUS OF ESTATE.

Though, generally, repairs and improvements cannot be made by the life tenant at the expense of the remaindermen, yet, where improvements have been made by compulsion, as in the case of municipal improvements, or where buildings become untenantable without neglect on the part of the life tenant, or improvements are necessary by reason of changed conditions, or to obtain a reasonable return from unproductive property and the expenditure is for the best interests of the remaindermen, as well as for the life tenant, and does not contravene the terms of the instrument creating the estate, the costs should be paid out of the corpus of the estate, or apportioned between the life tenant and the remaindermen, according to the benefit accruing to each.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 37, 38, 42; Dec. Dig. § 17.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIFE ESTATES (§ 17*)—EXECUTORS AND ADMINISTRATORS (§ 132*)—IMPROVE-
MENTS—LIABILITY OF CORPUS OF ESTATE.

Where part of an estate left to testator's wife for life consisted of a
farm, and, prior to the receipt of a letter from the department of health
of the city of New York to the tenant of the farm, stating that upon anal-
ysis the water in the well near the farmhouse was found to be con-
taminated and unfit for use in the washing of milk pails and utensils,
the life tenant, from funds in her hands as executrix, paid the cost cf
deepening and properly piping the well, which was absolutely necessary
to insure an ample supply of good water for the farm, she will be al-
lowed, on judicial settlement, the cost of such expenditure out of the
corpus of the estate, as against the objection of one of the remaindermen
and her husband, the coexecutor.

[Ed. Note.—For other cases, see Life Estates, Cent. Dig. §§ 37, 38, 42;
Dec. Dig. § 17;* Executors and Administrators, Cent. Dig. §§ 437, 545;
Dec. Dig. § 132.*]

3. EXECUTORS AND ADMINISTRATORS (§ 111*)—ACCOUNTING—EXPENDITURES.

A decedent's estate cannot be charged with the expenses of the executor
in the employment of counsel to oppose a motion by the executrix to com-
pel him to deliver to her personal property of the estate in his hands on
which he claimed commissions.

[Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. §§ 448–462; Dec. Dig. § 111.*]

Judicial settlement of the accounts of Almeda N. Whitney and an-
other, executrix and executor of the will of Lewis H. Whitney, de-
ceased. Decree entered.

George H. Bowers, for Almeda N. Whitney, executrix.
Vasco P. Abbott, for William H. Phillips, executor, and Cornelia
W. Phillips.

HERRIMAN, S. Lewis H. Whitney died in the year 1901, and
by his will gave to his wife, Almeda N. Whitney, the use during life
of his entire estate, "to be used and enjoyed by her without molesta-
tion or hindrance from any one." Upon the death of Mrs. Whitney,
the estate is given to the son and two daughters of the testator. The
said Almeda N. Whitney is executrix and William H. Phillips, the
husband of one of the daughters, is executor, "with power to sell and
convey real estate." Part of the estate consists of a farm which has
been in the possession of a tenant under Mrs. Whitney for a number
of years. At the time of the death of the testator there were three
sources of water supply upon the farm, namely, a well between the
house and barn, convenient to each, a well in the barn, and a spring
in a lot about 75 rods from the barn. The well between the house
and barn was only 12 feet deep and became practically dry during the
summer months. The water in this well, when low, was of a very
poor quality, and unfit for either cooking or washing purposes. The
well in the barn was a drilled well 80 feet deep, but so situated that
in the spring it was contaminated by the surface drainage from the
barn and could not then be used. The spring in the lot was stoned
up, and it does not appear that it was dry at any time of the year;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

but it was so far from the buildings that it could not conveniently be used as a source of supply for either the house or barns. These conditions remained unchanged until early in the fall of 1910.

At that time the milk from the farm was sent to a milk station from which it was shipped to New York City. Representatives from the department of health of the city of New York made an examination of the well near the house and of the water in the well, which was at that time very low, and stated to the tenant that a pure water supply must be had if the milk was to be received in New York City. Thereupon the life tenant and executrix had this well deepened to a depth of 64 feet and properly piped at an expense of $230.22, which was paid from funds of the estate in her hands as executrix, and which insured an ample supply of good water for use on the farm. A letter from an official of the department of health of New York City to the tenant on the farm dated September 30, 1910, after this work had been done, but evidently before the department had knowledge of it, stated that the water had been found upon analysis to be contaminated "and unfit for use in the washing of milk pails and utensils." This letter further stated that a reinspection would be made in October, when a pure supply of water must be found in use, if milk from the farm was to continue to enter the city, which is one of the principal markets for milk from this part of the state. It is not denied that the improvement of the well increased the value of the farm to the full extent of its cost. The life tenant and executrix asks to be allowed for this expenditure out of the corpus of the estate. Two of the three remaindermen consent that this be done; the only one opposing it being Cornelia W. Phillips and her husband, the executor.

[1] While the general rule undoubtedly is that repairs and improvements cannot be made at the expense of the remaindermen, but must be borne by the life tenant, this rule has been somewhat relaxed by late decisions, and the courts have become inclined to hold that, where improvements of a permanent character have been made to the estate, by compulsion, as in the case of municipal improvements to be paid for by taxation, or where buildings become untenantable without neglect on the part of the life tenant, or where improvements are necessary by reason of changed conditions, or in order to obtain a reasonable return from property which is unproductive, and the expenditure for such improvements is for the best interests of the remaindermen, as well as the life tenant, and does not contravene the terms of the instrument creating the life estate and the estate in remainder, the cost of such improvements should be paid out of the corpus of the estate, or apportioned between the life tenant and the remaindermen according to the benefit accruing to each. Chamberlin v. Gleason, 163 N. Y. 214, 219, 57 N. E. 487; Stevens v. Melcher, 152 N. Y. 551, 46 N. E. 965; Matter of Braunsdorf, 2 App. Div. 73, 37 N. Y. Supp. 229; Matter of Deckelmann, 84 Hun, 476, 32 N. Y. Supp. 404.

[2] In the case at bar there is no dispute that the deepening of the well was almost an absolute necessity. It certainly was an act of

good husbandry. That it increased the permanent value of the farm by the entire amount of its cost or more is not denied, and the remaindermen will, therefore, lose nothing if the expenditure is charged to the corpus of the estate. So far as they are concerned, it merely amounts to a change in the character of a small part of their inheritance from personal to real estate. All the remaindermen are adults. Two of them approve of the acts of the executrix. There is nothing in the will which expressly, or by implication, forbids an expenditure of this kind. On the contrary, the language of the will is broader than that usually employed in the creation of a life estate; for it gives to the widow, not merely such income as might be derived from an investment of the funds of the estate, but "the use during her natural life of all the property, real and personal, * * * the same to be used and enjoyed by her without molestation or hindrance from any one." The claim is certainly equitable and fair, and should be allowed, if its allowance can be justified under the law. It seems to me that the decisions above cited afford ample authority for such allowance.

[3] The executor asks to be allowed for an expenditure of $44.10, being $10 paid to one attorney, $15 to another attorney, and $19.10 for expenses, all in attempting to defeat a motion made by Mrs. Whitney, in 1905, for an order requiring the executor to deliver to her certain personal property of the estate then in his hands upon which he claimed commissions. His contention was disallowed at that time. He should not be allowed to charge the estate for this expenditure, made for his personal interests and in support of an invalid claim.

The executrix is allowed $50, in addition to her disbursements to be taxed, payable out of the estate, as the expense of this accounting.

Counsel may prepare findings and decree in accordance with the foregoing and settle the same on two days' notice.

Decreed accordingly.