ALLEN TILLINGHAST *et al. vs.* GEORGE E. HARROP *et al.*

NOVEMBER 9, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity brought by the devisees under the will of their uncle Alvin Tillinghast, who died November 15, 1935, a resident of the city of Warwick in this state, leaving a last will which was later duly probated. In this will he devised to them certain real estate which was in his possession at the time of his death, situated in that part of Warwick known as Greenwood and consisting of a farm and a residence and other improvements thereon. Until a short time before his death the farm had included a small adjoining piece of land, which he then conveyed to one of these complainants. But since the result of this suit must be exactly the same for this piece of land as for the rest of the original farm, we shall, for simplicity of treatment, hereinafter ignore the conveyance of this small piece of land.

The suit was brought against the heirs of Martha Tillinghast, who had been the wife of Alvin Tillinghast and had died October 17, 1924, intestate and seized and possessed in fee simple of all such real estate, except certain improvements thereafter added to it by Alvin Tillinghast.

She left no issue. By reason of that fact and the fact that she had died intestate, seized and possessed of this real estate, he had a legal life estate in it, after her death, in accordance with the first sentence of general laws 1923, chap. 367, sec. 4, as follows: "Whenever the intestate dies without issue and leaves a husband or wife surviving, the real estate of the intestate shall descend and pass to the husband or wife for his or her natural life."

A short time before September 22, 1932 he filed, in the matter of the administration of the estate of Martha Tillinghast, then still pending in the probate court of the city of Warwick, a petition, which was based on the latter part of the same section of general laws 1923, that this real estate, owned by her at the time of her death, be set off to him in fee simple. This petition was granted on September 22, 1932. After his death the complainants took possession of this real estate, as devisees under his will and in reliance upon that decree as having made him the legal owner thereof in fee simple. The respondents in the instant cause then brought against these complainants an action of trespass and ejectment to determine the right of possession of this real estate.

The instant suit was then brought to have the respondents temporarily and permanently enjoined from prosecuting the action of trespass and ejectment and from interfering with or disturbing the complainants' possession of the real estate, and to have a decree entered adjudging and decreeing that the complainants are in equity entitled thereto in fee simple, subject to the payment of legal claims against the estate of the testator Alvin Tillinghast.

There being no temporary injunction against the trial of the action of trespass and ejectment, it was tried before a justice of the superior court sitting without a jury. The trial resulted in a finding by that court that the above-men-

tioned decree of the probate court of the city of Warwick was void, because the petition therefor was filed too late, and in a final decision for the plaintiffs on the merits. That finding was sustained and that decision was affirmed by this court in *Harrop* v. *Tillinghast,* 59 R. I. 255, 195 A. 226.

The above-mentioned probate court decree must then be treated in the instant cause as without validity; and it is not now in dispute that the respondents, at the termination of the statutory life estate of Alvin Tillinghast upon his death, had the *legal* title in fee simple of the real estate now in dispute and the *legal* right to its possession, as the lawful heirs of Martha Tillinghast. The question in the instant cause is whether the complainants have the *equitable* title and right to possession of this real estate as the devisees under the will of Alvin Tillinghast.

Besides the facts above stated, as not being in dispute, there are certain other facts, which are set forth in the bill of complaint and are admitted by all parties to be true. These are that on or about June 1, 1900, Martha Harrop, a widow, who was the mother of the above-mentioned Martha Tillinghast, occupied and was the owner in fee simple of the land now in question, which was a farm, with a dwelling house and other improvements thereon; that about that time and under these circumstances Alvin and Martha Tillinghast came from Iowa, where they had been living for many years, and took up their residence with Martha Harrop on this real estate and thereafter lived there and operated the farm until Martha Tillinghast's death on October 17, 1924; that from that date until his death Alvin Tillinghast lived thereon and operated the farm; that on October 23, 1900, Martha Harrop, by a warranty deed duly executed and recorded, conveyed the real estate in fee simple to Martha Tillinghast; and that Martha Harrop, from that time until her death intestate on August 27, 1902, lived there with the two Tillinghasts.

The complainants, in their bill of complaint and at the hearings of the cause in the superior court on bill, answer and replication, and in their briefs and arguments before us, contended that at the time of his death Alvin Tillinghast was in equity entitled to the ownership in fee simple of this land and all the buildings and improvements thereon; and they based this contention on the following grounds, which they set forth in their bill.

The first is that on or about June 1, 1900, Martha Harrop, being in poor health and without sufficient means to support herself and to keep up the property and to pay the necessary expenses of holding it, entered into an agreement with her daughter Martha and the latter's husband that, in consideration that the husband would dispose of his farm in Iowa and he and his wife would come to live in the mother's home and would support and take care of her for the rest of her life, she would convey the real estate in question to him and his wife as joint tenants; and that he and his wife fully carried out their part of the agreement and furnished all the consideration on their part to be performed, the money therefor being supplied by him; but that the part of it to be performed by Martha Harrop was never performed.

The second ground is that Martha Harrop died intestate without real or personal property, leaving, surviving her as her heirs, her daughter Martha and three other children; that these other heirs made a claim for shares of the real estate in question; that it was agreed between these four heirs and Alvin Tillinghast that upon payment by him to each of them of the sum of $285.75 and his payment of all the funeral and other expenses of Martha Harrop, they would release to him all their respective rights and interests in this real estate; that on their petition he was appointed administrator of her estate and then carried out his part of the agreement by paying to each of them the sum of

$285.75 and paying all the funeral and other expenses of Martha Harrop, in consideration of which they executed to him a release of all their respective rights and claims in and to this real estate.

The third ground is that it was afterwards agreed between Alvin and Martha Tillinghast that he would continue "to make improvements on the property in the way of new buildings, cultivation of the land and other improvements" and that she would execute a will by which she would leave the property to him; that accordingly he made valuable improvements to the land and spent large sums of money on it; but that she died on October 17, 1924 without making any will. It was also contended by the complainants, at the hearings in the superior court on the merits of the cause and at the hearings before us on appeal, that there was an agreement between Alvin and Martha Tillinghast that each of them would make a will leaving all of his or her property to the other, and that he had performed his part of this agreement, but she had not performed her part of it.

The cause has been heard twice in the superior court on its merits, the result the first time being a decision and decree that the complainants were not entitled to the relief prayed for and that the bill be denied and dismissed. No findings of fact were made and there was no rescript discussing the evidence or discussing or deciding the questions of law involved in the cause. An appeal by the complainants to this court was sustained on the ground that there had been no complete and fair hearing and decision in the superior court; and the decree was reversed and the cause remanded to that court to be reheard on its merits. *Tillinghast* v. *Harrop*, 59 R. I. 260, 195 A. 229. As the opinion of this court there reported sets forth in much detail the allegations of the bill of complaint, we need not recite them herein any further than we have already done.

At the second hearing in the superior court on the merits of the cause a decision was made in favor of the respondents; a rescript was filed discussing the evidence and law of the case; and findings of fact were made. A decree was entered in which findings were made that there was no agreement on the part of Alvin Tillinghast and his wife for the support of Martha Harrop; that there was no purchase of the property by him from the heirs of Martha Harrop by virtue of the release signed by those heirs; that the great weight of credible evidence did not support the theory of mutual wills between Alvin Tillinghast and his wife in consideration of his improving the property; that the improvements were made upon her property by him as a gift; and that after her death the improvements that were made by him were made for his own benefit as life tenant. By this decree all the relief prayed for in the bill was denied and the bill was dismissed.

The cause is now before us on the appeal of the complainants from this decree, the reasons of appeal being, in effect, that the decision and decree of the superior court are against the evidence; that they are against the law; that the court erred in the admission of evidence; and that it erred in the exclusion of evidence.

The first question to be determined is whether the justice of the superior court went against the weight of the evidence in refusing to find that, as alleged in the bill of complaint, there was an agreement, made between Alvin and Martha Tillinghast on one side and Martha Harrop on the other side, that if Alvin and Martha Tillinghast would come to live in the home of Martha Harrop and would support and take care of her for the rest of her life, she would convey the real estate in question to them as joint tenants.

If such agreement was made at all, it must have been on or about June 1, 1900. There was evidence that, in our

judgment, showed that Alvin Tillinghast and his wife Martha returned from Iowa at or about that time and went to live with her mother in the latter's home. There was other evidence that they supported and took care of her until her death a few years later.

But the only evidence that this was done by them under an agreement, by which she agreed that if they did this, she would make a conveyance of this real estate to them, was testimony by one of the complainants, by that complainant's daughter and by another complainant. The first of these witnesses testified that Alvin Tillinghast, her uncle, told her that he and his wife came back to Rhode Island from Iowa about the year 1900 to take care of the latter's mother and "she was to give them the place for taking care of her." The witness did not tell when this statement was made by her uncle; but other things in her testimony indicate that it was soon after the death of his wife, which was in 1924.

Her daughter testified that after his wife's death she heard Alvin Tillinghast say that he and his wife came back from the west to take care of his wife's mother and that he had made an agreement with his mother-in-law and that "she was to deed the property to him and his wife to take care of her for the rest of her life."

The third of the witnesses mentioned above testified that she had lived in Alvin Tillinghast's home as his house-keeper during the last four years of his life and that during that period he had told her that he and his wife came from the west to take care of his wife's mother, who "agreed to give them the place if they would take care of her as long as she lived"; and that he told the witness that he had sold out his place in Iowa and came back to take care of his wife's mother; and that he did take care of her as long as she lived.

This hearsay evidence was admissible only under G. L. 1923, chap. 342, sec. 57, as amended by P. L. 1927, chap. 1048, now G. L. 1938, c. 538, §6, to read as follows: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

The proper rule as to the effect to be given to such testimony is well stated in *Paulson* v. *Paulson*, 50 R. I. 86, 145 A. 312, as follows: "Complainant properly urges that great caution should be exercised in weighing hearsay statements of Mrs. Paulson's intentions or what she had done. Repetition of what another has said is open to the danger of misunderstanding the exact language, misapprehending the idea intended by the speaker or misquoting the language used, to say nothing of intentional misrepresentation."

As to the testimony now under consideration, we have the further important facts that it was all given by persons who were strongly prejudiced in favor of the parties for whom they were testifying, two of them being such parties, and that the statements by Alvin Tillinghast as to which they were testifying were made about twenty-four years after the alleged agreement by Martha Harrop to which the statements related and were self-serving statements.

Not one of these statements thus testified to included the element that Martha Harrop agreed to convey the real estate to Alvin and Martha Tillinghast *as joint tenants,* as alleged in the bill of complaint; and according to the statute which was then in force on the subject, G. L. 1896, chap. 201, section 1, now G. L. 1938, c. 431, §1, a conveyance to two or more persons must be deemed to create a tenancy in common, unless the intention is made clear that they shall take as joint tenants.

The evidence from the land records in Iowa contradicts the statement which, as one of the above witnesses testified, Alvin Tillinghast made to her, that he had sold out his place in Iowa and came back to take care of his wife's mother. The land records in Iowa show no conveyance of real estate made by him within a period of about a year before and four years after the date when it is claimed that he came from Iowa to take care of his mother-in-law. This record evidence tends to lessen the weight to be given to the testimony of that witness; and because of the inconsistency of this record evidence with a positive allegation in the bill of complaint, it weakens the whole case of the complainants.

Moreover, one of the respondents and another witness for them testified that Martha Tillinghast told them that she came back from the west because she was lonely out there and she wanted to be with her own folks, nearly all of whom lived in Warwick in this state. And a disinterested witness for the complainants testified that Alvin Tillinghast told him that he left the west and came back to Greenwood at the request of his wife.

The case of the complainants as to the first main contention is greatly weakened, if not entirely overcome, by the admitted facts that Martha Harrop did not convey the real estate in question to Alvin and Martha Tillinghast as joint tenants or even convey it to them as tenants in common, but conveyed it to her daughter Martha alone, on October 23, 1900, and that, so far as appears, he did nothing at all about the matter, by way of protest or in any other way, between that date and the date of Martha Harrop's death, which was August 27, 1902.

If the agreement by the mother had been to convey the real estate to both Alvin and Martha Tillinghast, it seems to us very probable that he would have learned,

in the mother's lifetime, of her breach of the agreement and would have done something about enforcing it. There is uncontradicted evidence that at least as early as immediately after Martha Harrop's death he knew that she had conveyed the real estate to his wife alone. Yet there is no evidence that he found any fault with this or even mentioned an agreement with his mother-in-law until after the deaths of both her and his wife, presumably the only other persons who knew whether such an agreement had been made. These considerations and the weakness of the testimony in favor of such an agreement favor the conclusion that such an agreement was not proved.

The weight to be given to such testimony should be lessened if the evidence fails to support either of the other two grounds for relief relied on by the complainants and stated *supra*. This is so because the testimony introduced to support them is of statements which certain witnesses testified were made to them by Alvin Tillinghast.

One of these is that very soon after the death of Martha Harrop, intestate, Alvin Tillinghast bought out all the interests and claims of her heirs in the real estate in question, including the title of his wife, and took a release from them, covering all their rights and interests, and thus became the equitable owner of the real estate. This ground is set forth at length and apparently strongly relied upon in the bill of complaint. It was relied upon in the briefs and arguments before us, though it was not at all strongly pressed. Charles F. Rose testified that Alvin Tillinghast constructed some buildings on the real estate in question and that after the death of Martha Harrop he told the witness that he "had bought out the heirs" and said also: "You don't suppose I would have put up those buildings if I hadn't." Why he "bought out

the heirs", when the real estate already belonged to his wife, was in no way explained.

One of the complainants testified, evidently referring to the above-mentioned release signed by the children of Martha Harrop, that soon after the death of his wife Alvin Tillinghast talked with the witness about this paper and thought that it "was a deed or something to the place . . . . He thought the place was his. He bought out the heirs, he claimed."

Another witness testified that Alvin Tillinghast told him more than once that he had bought out the heirs. The witness said: "He told me more than once that he had all the Harrop heirs come to his house and he paid them all off." The witness added on cross-examination: "He said Aaron Harrop and George Harrop and Mrs. Thewlis came to his house one day and he paid every one of them off"; but that he didn't say anything about paying off his wife.

One of the attorneys for the complainants, who had been Alvin Tillinghast's attorney for five years before his death and in 1933 drew his last will, of which this witness was the executor, testified that the testator said that he owned this Harrop property; that he had come from the west; that he had then made a will in favor of his wife; and that she had made a will in his favor but he had failed to find it after her death. The witness then further testified that as executor he had found the release among the testator's papers, but that the testator had never discussed it with him. This witness also testified that the testator said that he had a dispute with one of the present respondents and that he went to an attorney to straighten out the rights to this property.

If Alvin Tillinghast then believed that he was entitled to the property because his mother-in-law had agreed to

convey it to himself and his wife as joint tenants, or because he had bought out all the interests in it of all the heirs of Martha Harrop and taken a release from them, or because of an agreement by his wife, as alleged in the bill of complaint, that, if he would make valuable improvements to the real estate, she would leave it to him by her will, it seems strange that he said nothing about any of these things to the attorney who drew his will and was to be executor of it, but only mentioned, with regard to his title, what were evidently the proceedings on his petition in the probate court, in the matter of the administration of his wife's estate, to have her real estate set off to him in fee.

The principal facts with regard to the release are established by uncontroverted evidence. On August 22, 1901, nearly a year and three months after Alvin and Martha Tillinghast came to live with Martha Harrop, as the complainants assert, and just about ten months after Martha Harrop had conveyed the real estate in question to Martha Tillinghast, Martha Harrop loaned to her son Aaron $1200, for which he then gave her a note for that amount, secured by a mortgage by him on property which he owned. She died intestate just about a year later and Alvin Tillinghast was appointed the administrator of her estate on February 26, 1903 and was duly qualified and gave a bond as such in the amount of $2000, it being customary to require a bond, in such a case, in an amount about double the value of the assets of the estate. He filed no inventory of such assets.

On March 21, 1903, as administrator, he executed a discharge of the above mortgage and recited that he had received full payment and satisfaction of the mortgage note. The release on which the complainants rely was executed by the four children of Martha Harrop, including Martha Tillinghast, and recited the receipt by each

of the four signers from Alvin Tillinghast, as administrator of the estate of Martha Harrop, of the sum of $285.75, thus amounting in all to $1143. By it the signers remised, released and forever quitclaimed to him "and to his heirs, executors and administrators, all and all manner of actions, debts, dues, claims and demands, both in law and equity which against said Alvin Tillinghast as Administrator of the estate of said Martha Harrop" each of the signers had or ought to have. This was dated September 17, 1903. The above is the entire substance of the release.

In view of these facts and the further fact that at the date of this release the title in fee of all the real estate now in question had been in Martha Tillinghast for about two years and continued to be in her until her death in 1924, we are convinced that we cannot properly hold that the justice of the superior court went against the evidence or the law in finding, as he did in the decree appealed from, as follows: "That there was no purchase of the property by Alvin Tillinghast from the heirs of Martha Harrop by virtue of the release signed by the heirs, including Martha Tillinghast, wife of Alvin Tillinghast, and that there was no reasonable ground to infer such passing of the title by virtue of this instrument".

It seems to us also that the evident incorrectness of the statement which Alvin Tillinghast is said by one of the complainants and another witness for the complainants to have made, to the effect that he claimed to own the real estate in question because he had bought out the heirs of Martha Harrop, lessens greatly the weight to be given to other statements which he is said by other witnesses for the complainants to have made.

We come then to the third ground relied on by the complainants, that Alvin Tillinghast, upon his wife's death,

became equitably entitled to the real estate, because she had, for a valuable consideration furnished by him, agreed with him that she would execute a will by which she would leave this real estate to him, but did not make such a will. In the bill of complaint this consideration furnished is solely described as an agreement by him to make improvements on the real estate by the construction of new buildings, *etc.* But in the complainants' brief and arguments before us the agreement is only described as one for mutual wills, by which each of them would leave all his or her property to the other; and the making by him of improvements to the real estate is brought in only as being conduct by him in reliance upon the alleged agreement for mutual wills.

No evidence was introduced that he agreed with his wife to make valuable improvements to the real estate. The complainants state in their brief that she "induced" him to improve the real estate and to erect buildings thereon. But we have found no evidence to that effect; and one of-the complainants' witnesses testified that he told her, this witness, that he wanted to make these improvements. There was, however, hearsay evidence, introduced under the statute above mentioned, that he had said to several witnesses that he had made a will in her favor and that she had promised to make one in his favor, which he could not find after her death.

One of the complainants testified that just after the death of his wife, Alvin Tillinghast told the witness that he and his wife had promised to make wills in each other's favor, and that he had made his. The daughter of this witness testified to the same effect; as did also another of the complainants, who said that Alvin Tillinghast said that the promise of his wife was made after her mother's death. Another witness testified that in September 1914 this witness and her husband had made wills in which

each of them gave everything to the other and that Alvin Tillinghast read these wills and said: "That is identically the same as my wife and I have made, or have done."

The above-mentioned attorney for the complainants testified to a statement by Alvin Tillinghast that he had made a will in favor of his wife and she had made a will in his favor. The witness then added: "He told me about the will that he had made in her favor when he returned from the west, and the will that she was to make in his favor, mutual wills, but he had failed to find that will." This statement seems somewhat inconsistent with the contention that Martha Harrop agreed to convey the real estate to Alvin Tillinghast and his wife as *joint tenants* and also with the contention that an agreement for mutual wills in each other's favor was made between the husband and wife after the real estate had been conveyed to the wife alone. It is extremely weak, if any, evidence that by agreement each was to make a will in favor of the other.

On the other side, one of the respondents, a brother of Martha Tillinghast, testified that she told him a year or two before her death, that she would not make a will for the Harrop property as long as there was a Harrop living. It is also noteworthy that there was not a shred of evidence that she ever did make a will.

It is well settled that a court should not enforce an alleged contract by one person to leave property to another by will, unless proved by clear and convincing evidence. Thus in *Spencer* v. *Spencer*, 25 R. I. 239, 55 A. 637, this court, at page 241 (638), said that contracts of this sort "may afford opportunity for fraud, one party being dead, and that courts will therefore require strict proof both of contract and consideration"; and in *Spencer* v. *Spencer*, 26 R. I. 237, 58 A. 766, where a nephew was trying to

enforce by a bill in equity an alleged contract by his uncle to leave a will in his favor, this court held that the alleged contract was not proved. It quoted with approval a long extract from the opinion in *Hamlin* v. *Stevens*, 177 N. Y. 39, 69 N. E. 118, a case involving an alleged agreement by a man to leave by will to a certain nephew the same share of his estate as to each of his own children.

A part of what was thus quoted from the opinion of the court of appeals of New York is as follows: "In *Shakespeare* v. *Markham* (72 N. Y. 400, 403) this court declared that 'contracts claimed to have been entered into with aged or infirm persons, to be enforced after death to the detriment and the disinheriting of lawful heirs, who otherwise would be entitled to their estates, are properly regarded with grave suspicion by courts of justice, and should be closely scrutinized and only allowed to stand when established by the strongest evidence.' " See also 1 Alexander on Wills, 158, §136; 1 Schouler on Wills, 821, §721.

The alleged contract for mutual wills which is relied on by the complainants in this cause is governed by the statute of frauds, G. L. 1896, chap. 233, sec. 6, paragraph First, or G. L. 1923, chap. 333, sec. 6, Paragraph First, as being a "contract for the sale of lands, tenements, or hereditaments." See 2 Williston on Contracts, rev. ed., 1404, §488, where this statement is made: "Contracts to devise real estate by will, since they contemplate a transfer of real estate for a consideration, are also within the Statute", referring to the statute of frauds. See also Restatement, Contracts, §193, Illustration 4; §197, Illustration 5.

It is true that where one party to an oral agreement for the transfer to such party of an interest in real estate has, *in reliance upon the agreement,* so performed his part of it that he will be greatly and unjustly damaged if the

other party's part of it is not performed, equity may compel performance by such other party. But before this doctrine will become applicable, it must be clearly proved that the performance, which the former party depends upon as a reason for the enforcement of the oral agreement notwithstanding the statute of frauds, was in reliance upon the performance by the other party of the latter's part of the agreement. *Peckham* v. *Barker*, 8 R. I. 17.

The only particle of evidence, found by us in this cause, which tends to show any action by Alvin Tillinghast in reliance on a promise by his wife to make a will in his favor, is the testimony of one of the complainants that he had told the witness that he made improvements on his wife's property on the promise that she would make a will so that he would not lose whatever he put into it. What these improvements, thus made, were, or what they cost or when they were made nowhere appears; nor does it anywhere appear that they were made at the request of his wife or in pursuance of the alleged agreement.

Even if we grant that valuable improvements were made to the real estate by Alvin Tillinghast during the period when his wife was the owner of it, it seems to us at least quite as probable that he made them for the benefit of his wife's estate in it and his own interest in it as her husband, including his right to a life estate in it after her death if he survived her, as that he made them in reliance upon a promise by her to leave the real estate to him by will.

It seems to be well settled that if a husband pays the purchase money for land and has the deed of it made to his wife, there is no resulting trust in his favor; and that likewise, if a husband makes improvements to land owned by his wife, they are presumed to have been made as a

gift to her, unless the evidence shows to the contrary. *Selover* v. *Selover,* 62 N. J. Eq. 761, 48 A. 522; *Luebbers* v. *Luebbers,* 97 N. J. Eq. 172, 127 A. 83.

In view of this state of the law and of the evidence as to the making of improvements by Alvin Tillinghast, while his wife owned the real estate in question, and in view of the law applicable to suits based on alleged oral agreements for mutual wills, and of the very unsatisfactory state of the evidence as to such an agreement by him and his wife, it is our opinion that we cannot properly hold that the justice of the superior court before whom this cause was heard the second time was wrong in finding in the decree that improvements which were made upon the estate of Martha Tillinghast by her husband during their lives were made as a gift to her, or in finding that the great weight of credible evidence did not support the theory of mutual wills between them in consideration of his improving the property.

We are also of the opinion that the evidence and contentions of the complainants as to the matter of mutual wills and as to improvements made by Alvin Tillinghast to the real estate in question during the period when his wife owned this real estate lessen, rather than increase, the weight to be given to the evidence in support of the first ground of relief relied on by the complainants.

Weighing the evidence as to this first ground of relief and bearing in mind, in so doing, what we have said in this connection as to the evidence offered to support the second and third grounds, we are convinced that we cannot properly hold that the justice of the superior court went against the evidence or the law in finding that there was no agreement on the part of Alvin Tillinghast and his wife for the support of Martha Harrop and refusing to sustain the first ground for relief relied on in the complainants' bill of complaint.

For the reasons which we have stated in this opinion, we conclude that the complainants have failed to sustain either of the first two reasons of appeal from the decree of the superior court, so far as that decree relates to the denial of any of the relief for which they specifically pray in their bill of complaint.

But the complainants contend also that, even if they are not entitled to any of the relief specifically prayed for by them, they are entitled, under their prayer for general relief, to a lien on the real estate for the value of the improvements which Alvin Tillinghast made thereto, while he was life tenant after the death of his wife, and that the denial of such relief was against the evidence and against the law. It is well settled, however, that a life tenant who makes permanent improvements to property does not thereby acquire a lien which is enforceable against a remainderman. *Hagan* v. *Varney,* 147 Ill. 281, 35 N. E. 219, 222. Moreover there was no evidence that Alvin Tillinghast, between the death of his wife and the entry of the decree of the probate court purporting to make him the owner of the fee of the real estate, made any improvement thereto which was of permanent value.

As to the period from the entry of that decree to his death, there was evidence that he spent considerable money on the real estate, in the mistaken belief that he was the owner under that decree. But nearly all the expenditures were for repairs, and as to those which were for improvements of a permanent nature, they were made under a mistaken belief that he was the owner, a belief that was not in any way caused by any of the respondents; and there is not even any evidence that any of them knew or had notice that he had that mistaken belief. There is, therefore, no support for an argument based on estoppel. *Olney* v. *Weaver,* 24 R. I. 408, 53 A. 287.

For the above reasons we are of the opinion that the refusal of the justice of the superior court to find, in the decree, that the complainants have an equitable lien on the real estate by reason of improvements made thereto by Alvin Tillinghast was not against the evidence or against the law.

There remain, for consideration, only contentions made by the complainants that the decree appealed from should be reversed by reason of rulings of the justice of the superior court as to the admission of evidence. The only one of these contentions that in our judgment merits discussion by us is that the justice wrongly refused to permit one of the complainants' witnesses to answer a certain question by the complainants' counsel.

This witness had first testified that, about twenty-three years before, she had been told by a certain person, deceased at the time of the hearing, of the arrangement between Alvin Tillinghast and his wife and his mother-in-law. The complainants' counsel then made it clear, by statements to the justice, that what he was trying to put in evidence was a statement, by that certain person to the witness, of what Martha Tillinghast had told that person as to why Alvin Tillinghast left the west to come to Rhode Island.

The justice refused to permit a question to be asked to bring this out, and put his refusal on the ground that the testimony which the complainants' counsel was trying to put in was not within the purview of the statute permitting, under certain restrictions, the introduction of testimony of pertinent statements made, before the beginning of the controversy between the parties, by a person deceased at the time of the trial. He held that it was not within the purview of the statute, because not only would the testimony of the witness have been hearsay, but also

the statement supposed to have been made to the witness by another person would have been hearsay, if that person had been alive and testifying.

We do not decide the question of the correctness of that ground of exclusion in the instant cause, since we are of the opinion that even if the ground given by the justice for his ruling was incorrect, the ruling was not prejudicial error justifying a reversal of the decree appealed from. The reason for that opinion is that the ruling of the justice was not final, but only tentative, because he stated that he reserved the ruling and would permit the complainants' counsel, if he desired to do so, to renew the request, a permission which was never taken advantage of.

For the reasons hereinbefore stated we are of the opinion that none of the complainants' reasons of appeal is well taken and that the complainants are entitled to no relief under their bill of complaint.

The appeal is denied; the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Emile H. Ruch, Charles B. Coppen,* for complainants.

*Goldberg & Goldberg, Patrick H. Quinn,* for respondents.