In the Matter of the Accounting of MICHAEL J. COLLINS, a Deceased Coexecutor of MICHAEL COLLINS, Deceased.

Surrogate's Court, Erie County, April 18, 1946.

*William Brennan, Jr.,* for petitioners.

*Frank Gibbons* for objectants.

VANDERMEULEN, S. Michael Collins died on the 7th day of April, 1922, leaving a last will and testament which was duly admitted to probate and letters testamentary issued to Michael J. Collins and Dennis J. Collins, as coexecutors on June 2, 1925. The first-named executor is now deceased and this accounting is made by the executrices of his estate.

Under his last will and testament, Michael Collins left the residue of his estate, after payment of debts, funeral and administration expenses and three legacies of $10 each, to his two unmarried daughters, Mary Collins and Hannah Collins, also known as Johanna V. Collins, for life. The will provides that upon the death of one of the life tenants, the other shall enjoy the estate for the term of her life. Upon the death of both daughters, the remainder is devised and bequeathed to the three sons of the testator, James, Michael J. and Dennis, share and share alike. Both of the daughters survived the testator and became life tenants of his estate. Mary Collins is now deceased and Johanna V. Collins, referred to in the will as Hannah Collins, is now in possession of the estate as surviving life tenant. James Collins, one of the remaindermen, died prior to the death of the decedent leaving a son, James J. Collins, and a daughter, Katharine A. Collins as his only children and heirs at law and they have succeeded to the one-third interest of their father in the estate herein.

The gross estate of the decedent herein consists of a farm of about thirty acres in the Town of Hamburg, Erie County, New York, which at the time of the decedent's death had an assessed value of about $2,000, market value of $3,000, and a deposit in the Western Savings Bank of Buffalo, New York, identified as account No. 45443, which amounted at the time of his death to the sum of $3,215.08. The expenses of the estate, including administration, are set forth in the account as $1,811.49.

The following objections have been interposed by the contestants, Katharine A. Collins and James J. Collins, to wit: "FIRST: Objects to the item of $1811.49 set forth in the summary statement of the said accounts in that it should show the amount thereof to be $1242.69 instead of said sum.

"SECOND: Objects to the item of $1373.59 deposited in account 45443 in the Western Savings Bank of Buffalo, N. Y. as shown in Schedule B, because the same should be $1542.39.

"THIRD: Objects to the following items shown in Schedule C attached to the said account for the reason that none of them are legal charges against the said decedent's estate but are charges against the owners of the real property for which the same were expended and should be paid out of the income therefrom, to wit:

| | |
|---|---|
| (a) Paid Inlaid Roofing Company for new roof on house in 1924 | $108.00 |
| (b) Paid John R. Queen, contractor, for necessary repairs to house and barn | $250.00 |
| (c) Paid Service Roofing Company, 766 Broadway, Buffalo, N. Y. for roof repairs in 1934 | $89.00 |
| (d) Paid Morton's Lighting Fixture Studio, 2233 Seneca St. Buffalo, N. Y. for wiring house and installing electric fixtures | $56.80 |
| (e) Paid Henry J. & W. Roth for labor and materials painting and repairing buildings | $65.00 |
| Total | $568.80 |

reducing the total amount of said schedule from $1811.49 to $1242.69."

The farm belonging to this estate had not been occupied for five or six years prior to the death of Michael Collins. The testimony is very descriptive of the bad condition of the house and barn on the premises and is not disputed.

It is conceded that as a general rule the life tenant is under no duty to improve the property which is the subject of the life estate and the cost of repairs and improvements are to be borne by him. (*Jacobs* v. *Steinbrink,* 164 App. Div. 715.) There are, however, exceptions to this general rule. "The principle that the life tenant should bear the repairs, taxes and interest on incumbrances is as a general rule entirely just and equitable. All that the life tenant is entitled to is the income. The real income is only the net return of the property above its annual charges. If the property is not kept in repair the income is

apparently increased, but only at the expense of the capital or *corpus*. So also, unless there is authority given the trustee by the will to invest in land, the *corpus* of the estate should not be expended to erect new buildings or make substantial alterations in the improvements on the lands. That is changing the character of the trust estate. But there is an entire difference between such a case and an expenditure to make not a new thing, but the thing received available and preserve it from destruction and decay. Here the life tenant has not permitted the property to become out of repair, but the trustee has received it in an untenantable condition." (*Matter of Deckelmann*, 84 Hun 476.)

In *Ford* v. *Knapp* (102 N. Y. 135, 141) the court in discussing *Scott* v. *Guernsey* (48 N. Y. 106) said: " That case does decide that the bare fact of improvements made does not, by itself, irrespective of their character and of the circumstances under which they were made, and their effect upon the property, necessarily give a right to an equitable allowance; and to that doctrine we fully accede. Every case of the kind must be determined upon its own facts and surroundings, and those may occur in which such an allowance would be unjust and inequitable. The opinion in *Scott* v. *Guernsey* points out that in the cases decided in this State there was some peculiar circumstance out of which the equity arose beyond the bare fact of improvements made."

After commenting upon various sets of circumstances in which equitable relief was granted and denied, the court said this (pp. 141–142): " But it does not deny the duty of a court of equity in a proper case to give its relief upon condition of an allowance for improvements, and does not undertake to specify all the cases in which such equity shall be recognized. Nor shall we undertake any such dangerous or impossible effort. The authorities leave us at liberty to consider whether, upon the facts and circumstances of this particular case, the improving tenant ought to be protected, and furnish us the power to grant the protection if it may justly be demanded." (See, also, *Stevens* v. *Melcher*, 152 N. Y. 551.)

In *Matter of Whitney* (75 Misc. 610, 612) there is the following statement by the court: " While the general rule undoubtedly is that repairs and improvements cannot be made at the expense of the remaindermen but must be borne by the life tenant, this rule has been somewhat relaxed by late decisions, and the courts have become inclined to hold that, where improvements of a permanent character have been made to the estate, by compulsion, as in the case of municipal improvements

to be paid for by taxation, or where buildings become untenantable without neglect on the part of the life tenant, or where improvements are necessary by reason of changed conditions, or in order to obtain a reasonable return from property which is unproductive, and the expenditure for such improvements is for the best interests of the remaindermen as well as the life tenant, and does not contravene the terms of the instrument creating the life estate and the estate in remainder, the cost of such improvements should be paid out of the *corpus* of the estate or apportioned between the life tenant and the remaindermen according to the benefit accruing to each.''

It is true that in most of the cases involving this problem, the management of the real property was in the hands of the executor or the trustee. That is absent in this case. But it was said by Justice Sears in *Matter of Schummers* (210 App. Div. 296, 300, affd. 243 N. Y. 548): '' A Surrogate's Court is governed by principles of equity as well as of law, is not prevented by any legal restriction from doing exact justice to any of the parties and may, therefore, give effect to such an equitable rule. (*Matter of Niles*, 113 N. Y. 547.) ''

It is upon these principles mainly that this court approaches this problem and in invoking these principles it feels justified in also taking into consideration the entire scheme of the will and the intention of the testator. By this instrument, Mary Collins and Hannah (Johanna V.) Collins were given not only the life use of the real property but also the life use of the personal property. It would be idle to assume that the deceased did not expect a reasonable income to be gleaned from the real property. He certainly was desirous of his daughters receiving benefit from his real property as well as the personal property. This could not be accomplished if the real property were permitted to deteriorate and become more and more untenantable each year. Although the executors had not the management of the estate, they still had the duty and privilege of preventing injury to the estate, if possible, including a further deterioration of the premises. The expenditures made were not only beneficial to the life tenants but to the remaindermen as well. It is common knowledge that the longer old buildings are continued in disrepair and unfortified against the elements the more serious is the loss which occurs to the property in the course of time.

Objection No. 1 is directed to the item of $1,811.49 in the summary statement, which it is claimed should be $1,242.69. The

difference represents the total amount of the items of Objection No. 3, in dispute. This objection is sustained in part and to the effect that the item of $1,811.49 should be $1,657.49.

The second objection is dismissed for lack of proof.

Objection No. 3 (a), (b) and (d) is dismissed and sustained as to (c) and (e).

Let the decree of judicial settlement provide accordingly.