## Helen G. HARRIS et al.

v.

## AUDUBON SOCIETY OF RHODE ISLAND.

### 81-102-Appeal.

Supreme Court of Rhode Island.

Nov. 2, 1983.

Edmund L. Alves, Jr., Gorham & Gorham, Providence, for plaintiffs.

Christophe H. Little, Tillinghast, Collins & Graham, Providence, for defendant.

## OPINION

SHEA, Justice.

This case is before us on appeal by the plaintiffs from a judgment entered in the Superior Court against them after a jury-waived trial in an action for declaratory judgment.[1] We affirm.

The plaintiff, Helen G. Harris, is the life tenant under the will of her late husband of certain real estate located in Scituate, Rhode Island. The defendant, the Audubon Society of Rhode Island, is the remainderman of the property under the will.

The issue presented to the Superior Court concerns the responsibility, if any, of the remainderman for the cost of improvements to the property ordered by the Department of Health of the State of Rhode Island. The improvements are to the physical plant of a commercial kennel that is being operated on a small section of the leased property.

After considering the agreed statement of facts, the arguments, and the written memoranda of counsel, the Superior Court justice ruled that the remainderman had no liability for the cost of improvements.

Ralph W. Harris died testate on December 28, 1976. In his will and first codicil, which were duly admitted to probate, he devised the real estate in question, a sixty-acre parcel, to his wife, Helen G. Harris, for the duration of her life. On her death, the remainder was to pass to the Audubon Society to be used as "a wildlife refuge and bird sanctuary to be known as 'The Alice O. Harris Memorial Wildlife Refuge'" (Alice O. Harris was the testator's first wife). Harris further provided that the Audubon Society could, in its discretion, from time to time sell part or all of the land, provided the funds realized from the sale were held and invested in a separate fund known as "The Alice O. Harris Memorial Fund," the income of which would be used for Audubon Society purposes. The principal and accumulated income of the fund would be used only for the purchase of land for the society. It was Harris's specific intention that there would be at all times either an "Alice O. Harris Memorial Fund" or an "Alice O. Harris Memorial Wildlife Refuge."

On a small section of the property there is a commercially operated kennel for cats and dogs known as the Peeptoad Kennels. The testator himself had operated the kennel at one time and later leased it to a third party. Helen G. Harris, the life tenant, and Robert L. Harris, executor under the will, have continued to lease the kennel to a third party. This lease produces about $3,600 a year in rental income for the life tenant.

---

1. See appendix for agreed statement of facts submitted to the trial justice.

In 1977, less than a year after the testator's death, the Rhode Island Department of Health inspected the kennel and ordered improvements to the kennel facility as a condition of license renewal. The ordered improvements included installation of new plumbing and a septic system, an upgrading of the heating system, new fencing and a concrete surface to replace gravel for the exterior animal runs, and a remodeling of the interior of the buildings. The cost of these improvements is estimated at $28,570.

In his decision, the trial justice held that the life tenant and the estate of the testator should bear the full financial responsibility for the improvements ordered by the Department of Health. He acknowledged that there were exceptions to the general rule that the life tenant is responsible for routine maintenance expenditures and the cost of normal improvements. None of these exceptions, however, applied to this life tenant.

It is well settled that a life tenant who makes permanent improvements to property does not acquire a lien that is enforceable against the remainderman. *Tillinghast v. Harrop*, 63 R.I. 394, 414, 9 A.2d 28, 37 (1939). The life tenant should not be permitted to make improvements for the benefit of the life estate at the remainderman's expense which the remainderman does not desire.

There are, however, exceptions to this general rule which are equally well settled. Section 127 of 1 *Restatement of the Law of Property* (1936) provides:

"(1) The owner of an estate for life has a power to impose a lien upon the interests subsequent to the estate for life, for the portion of the cost of such improvement ascertained under the rule stated in Subsection (2), when such improvement is of a permanent character and

(a) such improvement was begun, by the owner of the estate which was later divided into the estate for life and the interests subsequent thereto, at a time prior to the beginning of the estate for life, and was completed by the owner

of the estate for life, after his estate began and under circumstances making such completion reasonable conduct; or

(b) the owner of the estate for life was compelled by governmental authority to make it."

Subsection (a) of section 127 has no relevance. The proposed improvements in this case were not undertaken by the testator during his lifetime, nor were they required by the Department of Health until after his death. Clearly, the subsection has no application to the testator's operation of the kennel.

The plaintiffs argue, however, that the facts of this case fall within the exception set forth in section 127(1)(b) of the restatement having to do with improvements mandated by the government. After examination of the cited cases that apply this exception, we conclude that plaintiffs are in error. That exception has been applied principally when the property has only one practical use, generally as a residence, and the modifications to the property, such as indoor plumbing and structural rehabilitation, are required by municipal regulations in order to obtain an occupancy permit. Two other facts common to those cases are that the property was received by the life tenant in an untenantable condition and that the improvements were found to benefit the remainderman.

In *Eastman v. Peterson*, 268 Cal.2d 169, 73 Cal.Rptr. 803 (1968), a life tenant had made substantial improvements to old and rather dilapidated property, which improvements made it livable and brought it in conformance with local regulations. The California court implied that the improvement costs would be reimbursable but remanded the case for further findings.

A majority of decisions cited by plaintiffs are in the same category. Furthermore, they apply the principle of trust law that holds that since the principal is benefited by the improvements, the effect of paying for the permanent repairs by charging the corpus of the trust or estate is merely a substi-

tution of one form of principal for another. In *Greene v. Greene,* 19 R.I. 619, 625–26, 35 A. 1042, 1044–45 (1896), the cost of water closets, bathrooms, and sewerage connections was held chargeable to the principal. In *In re Testamentary Trust of Shurtz,* 242 Iowa 448, 455–56, 46 N.W.2d 559, 563–64 (1951), the cost of furnaces, toilets, and a water line making the property tenantable was charged to the corpus. The same result was reached in *In re Estate of Dolch,* 237 Iowa 1065, 1068–69, 24 N.W.2d 447, 449 (1946). Other cases cited by plaintiffs reach a similar result.[2] *In re Whitney,* 75 Misc. 610, 136 N.Y.S. 633 (1912), did not involve residential property but rather a farm. The state required improvements to a well water system before milk produced on the farm could be distributed in New York City. The court held that the improvement to the well was chargeable to the estate. *Id.* at 613, 136 N.Y.S. at 636.

█ In this case, the trial justice found as a fact that the proposed improvements, although permanent in nature, applied only to the kennel, which was a discretionary use by the life tenant. The kennel operation could not be carried on by the remainderman since its use of the property was limited to that of a wildlife refuge. This court has held many times that a trial justice's findings sitting without a jury are entitled to great weight and will not be overturned unless clearly wrong. *Wood v. Picillo,* R.I., 443 A.2d 1244, 1248 n. 4 (1982). The findings of the trial justice in this case were not clearly wrong. The kennel use was forbidden to the remainderman, and the improvements therefore were not necessary to preserve the remainder interest, nor would the improvements benefit the remainder. This case does not come within the governmentally mandated improvements exception.

Consequently, the trial justice below was correct when he determined that the life tenant was not entitled to reimbursement for the proposed improvements to the kennel.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court for further proceedings.

## APPENDIX

### Agreed Statement of Facts

The above cause is submitted to the court for decision on the pleadings and on the following statement of facts which have been agreed to by the parties:

1. The real estate involved in this action is in part presently used as a kennel, the Peeptoad Kennels, so-called, for boarding of dogs and cats.

2. Helen G. Harris is a life tenant with respect to said real estate. Her date of birth is October 28, 1911.

3. Audubon Society of Rhode Island is a remainderman with respect to said real estate, which devise pursuant to Article Fourth of the Last Will and Testament of Ralph W. Harris provides that said real estate is "... to be established and maintained as a wildlife refuge and bird sanctuary..."

4. General Laws 1956 (1976 Reenactment) § 4–19–6 provides that no person shall operate a kennel for more than six months subsequent to April 17, 1972 unless a license to operate such establishment shall have been granted by the R.I. Director of Health.

5. The Rhode Island Department of Health performed its annual inspection of said Peeptoad Kennels in July, 1977. The report of Dr. Alfred Parillo mandated that four improvements be undertaken or Peeptoad Kennels would not be granted a State kennel license for the year 1978.

**2.** *Savings Investment & Trust Co. v. Little,* 135 N.J.Eq. 546, 551, 39 A.2d 392, 395–96 (1944); *In re Collins,* 187 Misc. 188, 192, 61 N.Y.S.2d 488, 491 (1946); *In re Longbotham's Estate,* 346 Pa. 94, 96, 29 A.2d 481, 482 (1943).

6. The improvements ordered by the Rhode Island Department of Health are as follows:

a) Installation of chain-link fencing and gates to replace the present livestock fencing.

b) Installation of hot water supply and wash basins in all three kennel buildings.

c) Replacement of the gravel in the outside runs with concrete; and

d) Installation of a septic system.

7. The approximate cost for completion of these improvements, as determined by bids solicited in July, 1977, is $28,570.

8. Said Peeptoad Kennels were leased by Helen G. Harris to Donald McKellar for an annual rent of $3,600. The lease was terminated by Mr. McKellar on September 30, 1978.

9. The Rhode Island Department of Health granted a 1978 kennel license to Peeptoad Kennels conditioned on the commencement of the above-mentioned improvements by October 1, 1978. By notice dated October 2, 1978 said Department has informed Plaintiffs that the kennel license is revoked effective October 16, 1978 unless Plaintiffs request a hearing before the Adjudicative Hearing Officer of the Department. Plaintiffs have made a demand for such a hearing.

