This is an appeal from an order of the district court settling an accounting in the above estate.
Mary J. Daily died testate in Lewis and Clark County on December 18, 1931, leaving a considerable estate consisting of real and personal property. Pursuant to the terms of her will, Charles G. Daily, her husband, was appointed and qualified as executor. By the terms of the will he was given a life interest and estate in all of the property with the provision that upon his death the remainder in fee of all said property should vest in two nephews and a grand-nephew of the testatrix.
The estate has not been closed and Charles G. Daily continued to serve as executor until his death on May 5, 1941. Subsequent to the death of Mary J. Daily, he married a second time and his wife Margaret Daily continued to live with him as his wife until his death.
Pursuant to the terms of the will of Charles G. Daily, Margaret Daily was named as executrix. Upon the death of *Page 197 
Charles G. Daily, Leroy Beveridge, one of the remaindermen named in the Mary J. Daily will, was appointed administrator of her estate with the will annexed.
In November of 1941, Margaret Daily as executrix of the will of Charles G. Daily filed a petition and final accounting in the Mary J. Daily estate wherein she set forth and presented certain claims against said estate which she claimed were owing to the Charles G. Daily estate. Objections to this accounting were filed by Leroy Beveridge, administrator of the Mary J. Daily estate, and after a hearing the matter was submitted to the Honorable George W. Padbury, judge of the district court of Lewis and Clark county. Pursuant to findings, on March 8, 1943, an order was made approving the final accounting of Margaret Daily and directing the payment by Leroy Beveridge, administrator of the Mary J. Daily estate, to Margaret Daily of amounts totaling approximately $22,000, including interest, from which order this appeal was taken. The items involved and ordered paid are as follows: $10,594.33, with 8% interest from April 18, 1932, by reason of the payment of a mortgage on property of the Mary J. Daily estate from personal funds of Charles G. Daily during his lifetime; $731.41 representing the value of permanent improvements to property of the Mary J. Daily estate and paid by said Charles G. Daily; $195.80 by reason of the payment of fire insurance premiums on the property of the Mary J. Daily estate covering a period of time subsequent to Charles G. Daily's death. The order also declared that there was due from Margaret Daily, as executrix, to Leroy Beveridge, as administrator, the sum of $1,051.38 representing taxes against the Mary J. Daily estate which Charles G. Daily failed to pay during his lifetime.
By his objections to the settlement of the account hereinabove referred to, appellant opposed claims presented by Margaret Daily against the estate of Mary J. Daily and requested that Margaret Daily, as executrix, be directed to pay to him the total sum of $12,903.99 consisting of the following items: $5,103 representing the value of certain personal property *Page 198 
belonging to the Mary J. Daily estate which Charles G. Daily failed to deliver to the remainderman; $4,663.71 representing the value of 70 shares of stock of the Western Building and Loan Company, with dividends, which appellant alleged was part of the corpus of the life estate left Charles G. Daily; $2,596.58 representing unpaid inheritance and property taxes unpaid by Charles G. Daily which appellant was required to pay to protect his interest; $630.70 representing rentals collected by Margaret Daily subsequent to the death of Charles G. Daily. With the exception of the sum of $1,051.38 as taxes allowed by the court in diminution of petitioner's account, these payments were denied by the court.
The will of Mary J. Daily, after providing for the life estate of all of her property in Charles G. Daily with the remainder in fee of all such property to vest in the remainderman mentioned, contained the following provision: "Fifthly: I hereby nominate and appoint my husband, Charles G. Daily the executor of this my last will and testament, and I direct that he serve as such without the necessity of giving any bond upon qualifying, and that he shall have full power and authority to sell or otherwise dispose of any or all of my estate, at public or private sale, and with or without notice, and for cash or part cash and part deferred payments, at such time or times as to my said executor shall seem advisable and to the best interests of my estate, and without the necessity of obtaining any order or authority from any court, judge or tribunal and without the necessity of giving any bond upon the sale of real or personal property, and my said executor shall have full power and authority to invest the proceeds of such sale or sales as he may deem to the best interest of my estate or to use such portion of the proceeds of such sale or sales as may be necessary for other purposes.
"Nothing in this will shall be construed as requiring my said executor to make any accounting to any person whomsoever, but it is my desire that during the lifetime of my said husband, he shall have absolute control over all of my property, *Page 199 
real, personal or mixed, with the right to use the same and the proceeds thereof for his own benefit and according to his accustomed mode of living, fully believing that he will protect the same, so that upon his death the remaindermen herein mentioned shall come into a considerable estate."
The will of Charles G. Daily contained the following provision with reference to the $10,000 mortgage covering the property of the Mary J. Daily estate: "I do specifically devise and bequeath to my wife, Margaret Daily, a certain promissory note, dated April 18, 1932, for $10,609.33, which note was given by myself as Executor of the Last Will and Testament of Mary J. Daily, Deceased, and made payable to me personally, said note drawing interest at the rate of eight per cent (8%) per annum and expressly authorized by an order of the Probate Court, dated April 18, 1932.
"The circumstances of this note are as follows:
"My first wife, Mary J. Daily, on June 14, 1926, borrowed the sum of Ten Thousand and no/100 ($10,000.00) Dollars, evidenced by two promissory notes of date, June 14, 1933 [1926?] for $5,000.00 each, with interest at the rate of eight per cent (8%) per annum according to interest coupon notes attached to the original first mortgage notes. The bank required that I should sign these notes and mortgages, although the money was the borrowings of my first wife. After my first wife's death. I inherited moneys from the estates of my brothers, John R. Daily and Frank R. Daily. The notes to the Union Bank Trust Company became due. My first wife's estate could not pay these notes without selling some of the real property and this would have to be at forced sale when the full value could not be realized. Having inherited these moneys from my brothers' estates, I submitted to the Probate Court that I would be willing personally to advance the money to pay the Union Bank Trust Company obligations, provided I would be protected therein. The court authorized this to be done and authorized me as Executor of my first wife's estate, to give a note to myself, personally. Accordingly, I paid the *Page 200 
Union Bank Trust Company $10,609.33 on these notes and accrued interest and as the Executor of the Jennie Daily or Mary J. Daily Estate, gave myself personally a note for $10,609.33 to evidence the debt. This note, I have credited with One Dollar payments from time to time, so that it would not become outlawed.
"Under the will of my first wife, I was given a life estate in all of my said wife's property, real, personal and mixed, `including the income therefrom'. I have used this income, but from it I have saved from time to time approximately $3500.00 which I have credited to the $10,609.33 note referred to. I put this credit on it in a spirit of fairness, but I believe that the Jennie or Mary J. Daily estate still owes me the full $10,609.33 with interest at eight per cent per annum, as shown on the note, less the One Dollar payments that I have made from time to time to keep the note alive, and that her estate is not entitled to the credit of $3500.00 which I put on the note because that was from income that really belonged to me.
"Whatever equity there is in this note, I specifically give to my present wife, Margaret Daily, with full power and authority in her to demand payment thereof and sue for and collect the same."
By 14 specifications appellant assigns error of the court in approving the claims of Margaret Daily as hereinabove set forth and by refusing to allow the claims of the appellant as above set forth.
We shall take up separately the items objected to.
On June 14, 1926, Charles G. Daily and Mary J. Daily executed two promissory notes for the total sum of $10,000 payable to the Union Bank Trust Company of Helena and at the same time executed a mortgage upon a part of the real property then owned by Mary J. Daily. It was not satisfactorily shown what disposition was made of the proceeds of this loan but it does appear that the same were deposited to the personal account of Charles G. Daily in the Union Bank Trust Company. The interest on these notes was substantially *Page 201 
paid to the date of the death of Mary J. Daily, December 18, 1931, nothing having been paid on the principal at that time. On March 1, 1932, the sum of $6,000 was paid and credited on the notes. On April 18, 1932, Charles G. Daily as executor of the Mary J. Daily Estate filed a petition in the district court alleging that Mary J. Daily at the time of her death was indebted to the Union Bank Trust Company in the sum of $10,609.33 which said obligation was secured by mortgage upon property of the estate; that it was necessary to pay the same in order to prevent foreclosure of such mortgage; and that Charles G. Daily desired to pay such indebtedness out of his personal funds and to claim the right of reimbursement from the estate of Mary J. Daily. On the same day and without notice to the remaindermen or any notice, the court made an order authorizing Charles G. Daily to pay such indebtedness out of his personal funds and to charge the payment thereof against the estate. Thereupon Charles G. Daily paid the balance of the obligation, and executed, as executor of the estate, a note payable to himself individually in the sum of $10,609.33 with interest at eight per cent per annum, this being a demand note. The order above specified, signed by the then district court judge, W.H. Poorman, did not authorize the execution of this note but simply provided that "said executor be permitted to pay said claim against said estate, and charge the payment thereof against the estate of said deceased, upon final accounting and settlement thereof."
It does not appear that any claim against the Mary J. Daily estate, representing this alleged indebtedness, was presented or filed, but this we hold immaterial. It is to be noted that at the time of Judge Poorman's order there remained only a balance of $4,000 on the indebtedness to the Union Bank Trust Company.
There is some evidence in the record that the bank indebtedness was paid by Charles G. Daily out of money inherited by him from his brother. As above stated, however, there is no evidence as to the disposition of the proceeds of the loan from *Page 202 
the Union Bank. The note bears endorsements of payments of One Dollar each in April and October of each year from 1932 to 1941. It also bears endorsements of five payments in the amount of $500 each and one payment in the amount of $1,000 in 1940 and 1941, the last endorsement of $1,000 being under date of February 5, 1941. The order appealed from provided, with reference to these last endorsements totalling $3,500, that the same were mistakenly and inadvertently credited on said note and are not proper credits on said note and that the said total sum of $3,500 was the personal funds of Charles G. Daily. From a declaration in the Charles G. Daily will, and other evidence, it appears that this $3,500 was paid from the income from the estate accruing to Charles G. Daily during his lifetime.
The appellant contends that the proceeds of the $10,000 loan[1] were received and used wholly by Charles G. Daily and that no part of same were received by Mary J. Daily or her estate. This contention is based on the fact that the entire amount was deposited in the personal account of Charles G. Daily. The record is silent as to whether Mary J. Daily had a bank account during her lifetime and there is some evidence that the transaction of her business was handled through the personal account of Charles G. Daily. The Charles G. Daily will contained the following declaration with reference to this indebtedness:
"The circumstances of this note are as follows: My first wife, Mary J. Daily, on June 14, 1926, borrowed the sum of Ten Thousand and no/100 ($10,000.00) Dollars, evidenced by two promissory notes of date, June 14, 1933 [1926?], for $5,000.00 each, with interest at the rate of eight per cent (8%) per annum according to interest coupon notes attached to the original first mortgage notes. The bank required that I should sign these notes and mortgages, although the money was the borrowings of my first wife * * *." The statements, "My first wife * * * borrowed the sum of Ten Thousand and no/100 ($10,000.00) Dollars" and "although the money was the borrowings *Page 203 
of my first wife," are self-serving declarations and not competent evidence.
The petition of Charles G. Daily, above referred to, in the[2] Mary J. Daily estate, contained a recitation that Mary J. Daily was at the time of her death indebted to the Union Bank in the sum of $10,000. It does not appear whether evidence in connection with this indebtedness was adduced at the hearing, if any, on the petition. No notice of the hearing on the petition was ordered or given, and the court order purporting to authorize Daily to pay the Union Bank notes was signed the same day the petition was filed. Certainly the order obtained upon such petition, made without notice of any kind and apparently without the taking of evidence, cannot be regarded as an adjudication, or even evidence, that the sum of $10,594.33 was due from the Mary J. Daily estate to Charles G. Daily.
Even assuming that this indebtedness was solely that of the[3] Mary J. Daily estate, the life tenant, Charles G. Daily, was obliged to pay the interest thereon during the continuance of his estate, at least to the extent of the rents and profits received. "The life tenant is under a duty to pay the interest accruing during the period of his life estate." Simes Law of Future Interests, sec. 634. Todd's Ex'r v. First National Bank,173 Ky. 60, 190 S.W. 468; Tyler v. Bier, 88 Or. 430,172 P. 112; In re Lee, 171 Minn. 182, 213, N.W. 736, 737.
Assuming further that the mortgage indebtedness was paid by[4] Charles G. Daily from his personal funds, let us apply the rule governing in cases where the life tenant pays the encumbrance during his lifetime. In re Lee, supra, the rule is defined: "By a settled rule of the law, the life tenant, A., is bound to pay the annual interest. * * * This is his own debt, and for which he thus pays in keeping down the interest he is not entitled to any contribution from B., the owner in fee. When, therefore, A. redeems the mortgage, a certain part of the money paid to the mortgagee would be the equivalent of the annual interest on the mortgage which A. was obliged to pay at all events, and this part, being his own debt, need not *Page 204 
be refunded to him by B. * * * The problem then is to ascertain what portion of the total mortgage debt represents the annual interest on the mortgage which A. is bound to pay during his life; subtracting that amount from the total sum, the balance is the share which B. must contribute, and for which A. may hold the mortgage as a lien on the land. * * * The rule is settled, that the present worth of an annuity equal to the annual interest running during the number of years which constitutes his expected life represents the sum which A. is liable to pay as his individual indebtedness; the balance, after subtracting this sum from the mortgage debt actually paid to the mortgagee, is the amount which B. is liable to contribute." 21 C.J. 959; 31 C.J.S., Estates, sec. 49, p. 65; Engel v. Swenson, 191 Minn. 324,254 N.W. 2; Bartels v. Seefus, 132 Neb. 841, 273 N.W. 485.
In this case the income from the property was more than ample[5] to pay the interest on the mortgage indebtedness, being from $500 to $700 monthly. And here, since the life estate has terminated by the death of the owner, the length thereof is definitely ascertainable, and it is not necessary to resort to his life expectancy. The indebtedness was paid on April 18, 1932, and Charles G. Daily died on June 5, 1941, or nine years and eighteen days after such payment. The interest chargeable against the life tenant is the value at the time of payment of the indebtedness, of interest payments thereafter to accrue on the sum of $10,000 for that period. Had Daily not paid the indebtedness he would have been chargeable with $7,239.96. Since it was paid this amount must be diminished by discounting the annual interest payments at the rate prescribed by the mortgage, or the sum of $1,957.48, leaving a balance of $5,282.48. Deducting this from the amount of the principal debt, leaves $4,717.52 collectible as a contribution from the remaindermen, under the assumption that the whole debt was that of the estate.
However, as above indicated, the finding that the indebtedness[6, 7] to the Union Bank was that of Mary J. Daily alone *Page 205 
during her lifetime and that of her estate after her death is not justified by the evidence. A consideration of the evidence leads us to the conclusion that the most favorable finding as to respondent's contention is that Mary J. Daily and Charles G. Daily were joint obligors on the two notes. Had it been otherwise intended no sufficient reason appears for execution of the notes by the husband. The rule is thus stated in 13 Am. Jur. 26, sec. 24: "In the absence of proof to the contrary, it is presumed that all the joint obligors were benefited in equal degrees by the consideration and, hence, that they must, as among themselves, contribute equally in the payment thereof. Where inequality of benefits or interest appears, however, it may destroy the equality of contribution between them." Gelbach v. Dewey,105 Cal.App. 149, 286 P. 1062; 64 A.L.R. 213; Graves v. Smith,4 Tex. Civ. App. 537, 23 S.W. 603. There is no competent proof here that Mary J. Daily received the proceeds of the loan or that same were applied to her benefit; selfserving declarations and hearsay evidence relied upon by respondent are not proof. On the other hand, the mere fact that such proceeds were deposited to the account of Charles G. Daily under the circumstances of this case is not conclusive proof, by any means, that he received all of the consideration of this loan. This being so, we must assume, under the above rule, that Mary J. Daily and Charles G. Daily were benefited equally. Therefore the estate of the former cannot be held for contribution for more than one-half of the obligation. It follows that after deducting the interest payable by Charles G. Daily during his life tenancy, the trial court should have awarded respondent, at most, the sum of $2,358.76, with interest at 6% per annum from the date of payment of the indebtedness by Daily, or April 18, 1932. Since the rate of interest was not specified, the legal rate is applicable.
Appellant's next assignment is that the court erred in finding that there is due from the Mary J. Daily estate to respondent the sum of $731.41 by reason of permanent improvements *Page 206 
to the estate by Charles G. Daily. The items enumerated in this finding (No. IX) are:
August 1938 New water main in block _______________ $ 52.08
May 1939 Remodeling flats, 1 — 2 (designated `making flats' in petition) ___________ 94.53
October 1938 New floor 135 1/2 N. Main _____________ 137.63 Floor furnace _________________________ 69.75
Sept. 1939 Rewiring, Batch _______________________ 71.89
 Putting joist in #3 | _______________ 112.56 Piping gas in #3 |
April 1940 Rewiring Scharpf's, Carlsons, Martins, Shoe Shining Parlor, Brady and flats __ 260.70
October 1940 Remodeling Novelty _____________________ 176.10
The evidence with reference to these items is obscure, consisting mostly of bare entries in an account book kept by Charles G. Daily.
The general rule as to the right of a life tenant to[8] contribution for improvements made by him is stated in 31 Corpus Juris Secundum, Estates, sec. 45, p. 56: "The rule, as generally stated, is, that if the life tenant himself makes permanent improvements it will be presumed that they were for his own benefit, and he cannot recover anything therefor from the remainderman or reversioner * * *."
"As a rule, a life tenant has no right to reimbursement from the reversioner or remainderman with respect to improvements placed upon the premises by him. * * * The life tenant may, of course, be under a duty to make repairs to avoid permissive waste. But such repairs are not in the nature of permanent improvements, and are to be borne solely by the life tenant." Simes Law of Future Interests, sec. 636, and cases cited. Stahl v. Schwarz, 81 Wn. 293, 142 P. 651; Smith Shoptaw v. Stanton, 187 Ark. 447, 60 S.W.2d 183; Day v. Day, 180 Minn. 151,230 N.W. 634; Jones v. Harsha, 225 Mich. 416, 196 N.W. 624.
The rule as to repairs is thus stated in 31 C.J.S., Estates, sec. *Page 207 [9] 44, p. 55: "A tenant for life must make all the ordinary repairs necessary to preserve the property and prevent its going to waste, to the extent at least of its rental value, unless there is a provision to the contrary in the instrument creating the estate. He is bound to keep the premises in as good repair as they were when he took them, not excepting ordinary or natural wear and tear." Sec. 6776, R.C.M. 1935.
The items of repair or improvement were voluntarily undertaken[10] by the life tenant himself, obviously for the purpose of keeping the property in such a state of repair that it might be profitably rented. Whether regarded as repairs or improvements they are not such permanent improvements as to take them out of the above rule. The outlay expended by respondent for the upkeep of this property over a period of nine years does not appear to be disproportionate or unusual. The actions of the life tenant do not indicate solicitude on his part to protect or enhance the interests of the remaindermen, and the evidence discloses that the property was, in fact, in disrepair at the expiration of the life estate. The district court erred in allowing these items as a charge against appellant.
The item of $195.80, ordered to be paid to respondents,[11] representing a portion of fire insurance premiums, is not disputed, and was correctly allowed.
It is next contended by appellant that the court erred in[12] allowing in diminution for taxes paid by appellant only the sum of $1,051.38, instead of $2,506.58, as claimed. The record does not disclose how the court arrived at the amount allowed. Appellant testified that he paid inheritance tax of $611.55 and penalty thereon of $357.75, total $969.30. He also paid the property tax for the last half of 1940, $859.95, and five-sixths of the amount due for the first half of 1941, $677.33. It is elemental and is here conceded that a life tenant, in possession, enjoying the rents and profits is liable for payment of ordinary taxes on the property during the continuance of his estate, with certain exceptions. Sec. 6776, R.C.M. 1935. We think the fair rule to be that on the death of the life tenant *Page 208 
taxes for the current year should be apportioned between him and the remainderman according to the respective periods of their enjoyment. 31 C.J.S., Estates, sec. 47, p. 61.
Charles G. Daily died on May 5, 1941, and was therefore[13] chargeable with four-sixths of the tax for the first half of 1941. No authority is cited by counsel with respect to liability for payment of the inheritance tax. However, Chapter 145, (Code of Civil Procedure) R.C.M. 1935, provides a method of apportionment, pursuant to which Judge Padbury, by order in this estate, fixed the amount of inheritance tax due from the life tenant and each of the remaindermen, which we abide by. The district court should have allowed the following amounts, taxes paid by appellant:
Inheritance tax payable by Charles G. Daily __________ $ 103.37 Property tax last half 1940 __________________________ 859.95 Four-sixths property tax first half 1941 _____________ 541.84 ________ Total _____________________________________________ $1505.16
Appellant complains that the court erred in not directing[14] payment by respondent to him of $631.71, representing property rentals collected and retained by respondent for that portion of May, 1941, subsequent to the death of Charles G. Daily. It appears clear to us that respondent, or her husband, collected $720 as rentals for that month, and paid out $103.76 for April expenses. Of the balance she retained $462.18, representing the three-fourths interest belonging to the estate. This has not been paid or accounted for to appellant. The court erred in not directing payment by respondent of 26/31 of that amount, or $387.40.
Among the assets of the Mary J. Daily estate were 70 shares of[15] stock of Western Loan and Building Company. By a petition filed in that estate on April 20, 1933, the executor thereof, Charles G. Daily, requested an order authorizing the surrender of the certificates therefor and issuance of new certificates to him personally. This was based on the declaration, under oath, that Daily had advanced more than $10,000 to *Page 209 
the state to pay estate debts, and might desire to use said stock to partially reimburse himself, or to discharge further indebtedness of the estate, and that "it would be more convenient to him to have said certificates in his name." On the same day an order was made granting said request and directing the corporation to so transfer said stock. No hearing was had upon this petition and no notice given. Daily later delivered fifty shares to his sister, Mrs. Hollenbeck, and twenty shares to Margaret Daily, the latter being in the nature of a gift. There is some testimony to the effect that the delivery to Mrs. Hollenbeck was in repayment of a debt owed to her by Daily, but the circumstances of this transaction cannot be determined from the record. Unless it should appear that this transfer was in settlement of a debt owing to Mrs. Hollenbeck from the Mary J. Daily estate, it appears that such delivery was contrary to the intent of the will, and also contrary to the express purpose for which Daily obtained title to the stock. In any event, respondent is under a duty to account for the same. It was stipulated by the parties that the stock delivered to Mrs. Hollenbeck is valued at $2,766.62, and the other at $1,043.48 "with a balance of $853.71 remaining to be paid on that recovery certificate * * *." This apparently takes into consideration a stock loan of $225 as shown in the inventory and appraisement.
Respondent based the right of Daily to dispose of this stock,[16] and of other personal property, on authority found in the Mary J. Daily will, hereinbefore quoted as paragraph fifth thereof. Whether, under that provision, Charles G. Daily exceeded his authority in disposing of the fifty shares of stock to Mrs. Hollenbeck, we cannot determine in this proceeding for the reason of the lack of evidence of the circumstances surrounding that transaction. This applies also to the disposal or disappearance of other personal property not shown in the inventory, for which appellant demands an accounting from respondent. As to the stock delivered to respondent a different question is presented. Clearly the Mary J. Daily will does *Page 210 
not authorize the life tenant to dispose of the personal property by gift. Respondent should have been required either to deliver such stock to appellant or to pay to him its value at the date of Daily's death, and the district court erred in not so ordering. So far as can be determined from the record the value of the equity of the Mary J. Daily estate in this certificate at that time was $855.71.
As indicated, we are not able to rule on the merits of appellant's claims in connection with the stock delivered to Mrs. Hollenbeck or the other personal property mentioned in paragraph IV of appellant's objections to the petition for settlement of account. Since obviously it is the duty of the executor to account for property of the estate coming into his possession, a further hearing should be held in order to permit the court to determine what accounting therefor by respondent is proper, to consider, inter alia, whether the disposition of such property was in accordance with the terms of the Mary J. Daily will, and to make a supplemental order accordingly.
There is no merit in respondent's three cross-assignments of error. The court correctly overruled respondent's motion to strike from appellant's written objections. No prejudicial error resulted from the admission of evidence complained of in cross-assignments two and three.
The order appealed from is reversed, and the cause is remanded to the district court with directions to dispose of this matter by order in accordance with the views expressed herein.
Mr. Chief Justice Johnson and District Judges William R. Taylor and F.V. Watts, sitting in place of Associate Justices Adair and Angstman, disqualified, concur.