IN THE MATTER OF THE ESTATE OF JULIUS LINDHARDT, DECEASED. W. A. McDONALD, AS FORMER EXECUTOR, APPELLANT, v. H. B. HOFFMAN, ADMINISTRATOR WITH THE WILL ANNEXED, ET AL., OBJECTORS AND RESPONDENTS.

No. 9534.

Submitted September 19, 1957. Decided January 14, 1958.

320 Pac. (2d) 357.

Doyle & Francisco, Conrad, Howard T. Francisco, argued orally, for appellant.

Hoffman & Cure, Great Falls, Harvey B. Hoffman, argued orally, for respondents.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from the district court of the ninth judicial district of the State of Montana, in and for the County of Glacier, from an order of that court disallowing certain items in the final account of W. R. McDonald, the former executor of the estate of Julius Lindhardt.

The deceased, Julius Lindhardt, died testate on March 10, 1950. In his will he devised and bequeathed to his wife, Annabelle Lindhardt, "a life estate in all of the real estate of which * * * [he] may die possessed." He devised and bequeathed the remainder of his property to his nephews, the objectors herein, Lawrence Lindhardt, Holger Lindhardt, Paul Lindhardt, Marshall Lindhardt, Ernest Lindhardt and George Lindhardt. The will then directs that W. R. McDonald be appointed as executor of such will.

McDonald filed petition to probate the will March 23, 1950. The will was admitted to probate and letters testamentary issued on April 26, 1950.

The nephews filed a petition for the executor's removal on September 23, 1953, upon the following grounds: (1) Misappropriation of the legacy to pay debts lawfully chargeable to the life tenant; (2) Gross mismanagement and neglect in that: (a) the executor failed to report all the property, or to file inventory on time; (b) he failed and refused to file any account, though requested to do so by the legatees, and he concealed the estate or the status thereof; and (c) he apparently failed to give notice to creditors.

On January 13, 1954, the court entered an order revoking McDonald's letters testamentary and appointing H. B. Hoffman administrator with the will annexed.

Final account was filed by McDonald on March 30, 1954.

Objections were filed thereto April 9, 1954, when the account came on for hearing.

The objections to the final account were to the effect that some $620 paid to the life tenant as interest on the sale of real property was improper because the proceeds on the sale were equitably converted into personalty when the deceased died, therefore giving the life tenant nothing in regard to those proceeds; next, that certain repairs, insurance premiums and taxes paid by the executor were improperly paid out of estate funds and were properly chargeable to the life tenant; last, that because of mismanagement, failure to pay taxes or file returns the executor should be disallowed his fees.

At the trial, with regard to the payments under the land purchase contract, McDonald testified he thought the life tenant was entitled to those payments constituting interest under the contract. His testimony with regard to executor and attorney fees was that he had performed extraordinary services in behalf of the estate in managing and maintaining the property, therefore he thought himself entitled to the fee withdrawn from the estate.

The respondents introduced no testimony rebutting the fact the payments and expenses were made, or showing they were unreasonable or unnecessary.

At the conclusion of the hearing, the trial court issued its order disallowing the $620 paid to the life tenant under the land purchase contract; disallowed some $8,603.55 for other items which had been paid out by the executor constituting repairs, insurance and miscellaneous items objected to by respondents; and made the following order with regard to executor fees: "* * * that the following amounts, being alleged compensation withdrawn by W. R. McDonald from the funds of the above-entitled estate, are to be disallowed; the question of compensation, if any, to be paid to W. R. McDonald to be determined when the full amount of the money lost to the estate by reason of failure to make and submit proper Federal and State Income Tax Reports and payments, also any other

amount or amounts which may be lost to the estate by reason of the dereliction of said W. R. McDonald, the amount to be charged to Mr. McDonald to be determined at a hearing at a time set for that purpose where evidence as to such amounts can be offered by the administrator with the will annexed, subject to controversion of said W. R. McDonald, and the Court will then at that time make an order allowing the said W. R. McDonald the amount, if any, to which he may be entitled upon the evidence then and there submitted. The funds disallowed are as follows, to-wit: ($3,875.00)."

There are four issues raised on this appeal: (1) Did the district court err in disallowing McDonald the $620 paid the life tenant from the proceeds of the land purchase contract? (2) Did the district court err in disallowing certain items amounting to $5,674.62 in McDonald's account expended for repairing, maintaining and insuring the estate property? (3) Did the district court err in disallowing executor fees? (4) Did the district court err in not surcharging the executor with interest upon the legacies (cash) from the time distribution should have been made?

This court will examine the issues presented in the above order.

In the lifetime of the deceased he entered into a land contract for the sale of certain land to Robert G. Seubert and Jean C. Seubert. The contract for sale operated as a conversion of the real property into personalty. Kern v. Robertson, 92 Mont. 283, 12 Pac. (2d) 565, 13 C.J., Conversion section 8, page 855; 18 C.J.S., Conversion, section 9, page 48; 19 Am. Jur., Equitable Conversion section 11, page 11; Calvin v. Custer County, 111 Mont. 162, 107 Pac. (2d) 134; In re Briebach's Estate, 132 Mont. 437, 318 Pac. (2d) 223.

It is obvious that the life tenant, whose life estate was in the realty, was entitled to nothing under the contract. Therefore, the item of $620, paid by the executor to Mrs. Lindhardt, was properly disallowed on his account.

The real estate in which the life tenant, Anna Lindhardt,

has an interest, which is relevant here, is as follows: a private dwelling in which the life tenant lived and three business houses leased for the following purposes, a bakery, a post office and Buttrey's store.

The second issue is based upon contentions of McDonald that the district court erred in disallowing the following groups of expenditures on his final account: (1) ordinary repairs on business property amounting to $189.95; (2) repairs on business property ordinarily charged off over more than one accounting period amounting to $1,811.87; (3) repairs on the dwelling house amounting to $634.97; (4) improvements amounting to $1,313.03; (5) insurance amounting to $1,274.04; (6) certain items, although charged to expense of income, actually paid out of estate funds or principal, amounting to $450.76.

It is well-settled that the burden is on the executor to establish his right to each item of expense on the account. In re Ruane's Estate, 125 Mont. 204, 233 Pac. (2d) 400; Montgomery v. First Nat'l Bank of Dillon, 114 Mont. 428, 136 Pac. (2d) 775. If evidence supporting the item of expense shows it was a reasonable expenditure, then it should be allowed. In re McKinnon's Estate, 118 Mont. 217, 164 Pac. (2d) 726.

In a proceeding involving objections to an administrator's account, being equitable in nature, the Supreme Court will review and determine all questions of fact arising from the evidence in the record, as well as questions of law on appeal. In re Mullen's Estate, 97 Mont. 144, 33 Pac. (2d) 270; In re Connolly's Estate, 79 Mont. 445, 257 Pac. 418.

The administration of estates is peculiarly within the cognizance of equity, and the court, in adjusting accounts of executors, is governed by principles of equity as well as law. In re Sikorski's Estate, 127 Mont. 563, 268 Pac. (2d) 395.

Montana statutory law imposes a duty upon the executor of an estate to keep in good and tenantable repair all houses, buildings and fixtures thereon which are under his control. R.C.M. 1947, section 91-2210. He shall also be allowed all ne-

cessary expenses in the care, management and settlement of the estate. R.C.M. 1947, section 91-3405.

It has been held that an executor need not get the approval ▮ of the court before making repairs and improvements on property, but, in the absence of such approval, the burden is upon him to prove that the expenditures were made pursuant and according to the law. In re Fulmer's Estate, 203 Cal. 693, 265 Pac. 920, 58 A.L.R. 430; In re Hansen's Estate, 55 Utah 23, 184 Pac. 197. Where there has been no prior order of the court procured before making the repairs and improvements, the executor has the burden of proving the expenses were made in good faith, were reasonable and were necessary. In re Estate of Maddalena, 42 Cal. App. (2d) 12, 108 Pac. (2d) 17; In re Estate of Roberts, 27 Cal. (2d) 70, 162 Pac. (2d) 461; In re Moore's Estate, 88 Cal. 1, 25 Pac. 915, 916. As was said in the Moore case, supra, 88 Cal. at page 4, 25 Pac. at page 916: "* * * the court must determine whether, under all the circumstances, the repairs were necessary, and the expenditures reasonable."

Under our law, the life tenant is legally burdened with preventing ordinary waste on the estate and must pay taxes and other annual charges, together with a just proportion of extraordinary assessments benefiting the whole inheritance. R.C.M. 1947, section 67-801; In re Daily's Estate, 117 Mont. 194, 159 Pac. (2d) 327.

The executor has the duty of paying ordinary repairs out ▮ of the life tenant's income, and if he improperly charges them to the principal or corpus of the estate he may be surcharged for the amount so taken. Warren v. Warren, 148 Ill. 641, 36 N.E. 611; In re Chapman, 32 Misc. 187, 66 N.Y.S. 235, affirmed 59 App. Div. 624, 69 N.Y.S. 1131; Peck v. Sherwood, 56 N.Y. 615; In re Smith's Will, Sur., 82 N.Y.S. (2d) 468; In re Schneider's Will, 206 Misc. 18, 131 N.Y.S. (2d) 215.

In the instant case the respondents have not put in issue the good faith of McDonald in making the various expenditures, nor have they questioned their amount, necessity or

reasonableness. In fact, at the hearing respondents expressly waived any proof as to these matters which McDonald was willing to introduce. Their only objection was to the manner in which the repairs were charged.

As was said before, there was $189.95 charged to Expense ▮ of Income but paid out of estate funds for ordinary repairs on business property. These items consisted of repairs on a furnace, $45.50, a new door for Buttrey's, $129, a lock on a door, $6, and one other miscellaneous item of repair, $9.45. Since the duty was on the life tenant to bear the burden of ordinary repairs and prevent waste, these items were properly disallowed because McDonald should have charged them and paid for them out of income, not from estate funds. The fact that he credited them to Expense of Income does not free him from the duty of also paying for them out of income. See Warren v. Warren, supra; In re Chapman, supra; Peck v. Sherwood, supra.

The next group of repair items disallowed were those which ▮ are ordinarily charged off over more than one accounting period; in this case those items totalled $1,811.87. They consisted of the following expenditures: for new roofs on the various business establishments, $305.80, $438, $136.07 and $345; for a new sidewalk, $250; for repairing the interior of the post office, $337.

These items were all paid out of estate funds. Some of them were charged to Expense of Income and others to Protecting Principal, the bulk under the latter heading.

It is well-settled that roofs, sidewalks and repainting are ▮ ordinary repairs chargeable against the life tenant. See Annotation in 128 A.L.R. 199, Rights and duties of life tenant and remainderman with respect to repairs and improvements, 175 A.L.R. 1434, 1459-1460. However, these are repairs which are normally charged off over more than one accounting period. The reason for this practice is that their life is much longer than one year, therefore, the expense is deducted from income over the life of the repair or improvement to ac-

curately reflect the actual cost of the repairs allocable to each year. In cases where the repairs are of such a nature the courts, attempting to do equity to both parties, allow the initial expense of those items to be paid for out of estate funds. An allocable portion is deducted from each year's income as it becomes payable and paid back into corpus until the corpus is repaid the sum initially expended.

This rule is admirably illustrated by the California case of In re Estate of Roberts, 27 Cal. (2d) 70, at page 80, 162 Pac. (2d) at page 467, supra, wherein the court said: "The question then arises, however, how such extraordinary expenses, [roofs] ultimately chargeable to income, should be charged when the benefits of the repairs and replacements are to extend over several accounting periods. 'It is a generally accepted principle of accounting that, where practicable, expenses and costs which are a charge against earnings of more than one period should be apportioned equitably to the specific periods which derive the benefit. * * * From the standpoint of good accounting practice, there is no option as to how items should be charged when the benefits therefrom clearly aid or are reasonably expected to aid subsequent periods.' Montgomery, Auditing, 6th ed., page 246. This principle is given specific application in the Restatement of Trusts, section 233, comment *l:* 'If the * * * probable life of the improvements is limited in duration, although the cost of the improvements is payable out of principal, the trustee is under a duty to the beneficiary entitled in remainder to amortize the cost of such improvements out of income, in accordance with such reasonable plan as he may adopt. * * * The result is that if the trust does not terminate before the end of the probable life of the improvements, the whole cost of the improvements will be paid out of income. This is fair because the beneficiary entitled to the income gets the full benefit of the improvements and the remainderman gets no benefit. On the other hand, if the trust terminates prior to the end of the probable life of the improvements, the payments from income will cease on the

termination of the trust. This is fair because the beneficiary entitled to the income has not received the full benefit from the improvements but the remainderman receives a part of the benefit.' Under this rule the expenses in the present case would first be paid out of corpus, but the amounts allocable to each accounting period would be charged to the income of that period and refunded to corpus.''

It should be noted that California has statutes nearly identical to our own sections 91-2210 and 67-801. Other cases utilizing the restatement rule are: In re Del Drago's Estate, 179 Misc. 383, 389, 36 N.Y.S. (2d) 811; In re Davies' Estate, 197 Misc. 827, 96 N.Y.S. (2d) 191, 199, 200, affirmed 277 App. Div. 1021, 100 N.Y.S. (2d) 710; see also Newbury v. United States, 57 F. Supp. 168, 175, 102 Ct. Cl. 192, where the rule is applied in the concurring opinion.

This rule is the proper one to follow in the instant case, in order to arrive at the most just and equitable result to both parties. In the case of such repairs, as was said in In re Estate of Roberts, supra, neither party benefits at the expense of the other. Rather, each party bears his equitable share of the burden for his proportionate share of the benefit. Such a result appeals to the spirit of equity, which governs this field of probate law. In re Sikorski's Estate, 127 Mont. 563, 268 Pac. (2d) 395, supra.

The trial court, pursuant to this rule and our instruction, should determine the life of the repairs and disallow the portion allocable to the years dating from the time they were made to the time of filing the final account, but allow that portion which is still to be recovered over the life of the repairs.

The next group of items in the sum of $634.97 are all repairs on the private dwelling now occupied by the life tenant and were paid out of estate funds. They are broken down into the following items: a sidewalk and steps, $60; painting the house, $336; paint costs, $39.78 and $199.19.

The executor was requested to make the repairs by the life tenant. Therefore, all of these items fall within the rule

laid down in In re Daily's Estate, 117 Mont. 194, 159 Pac. (2d) 327, supra, which states that any improvements made by the life tenant are done at his or her expense and cannot be charged against the remaindermen. That is, the life tenant cannot voluntarily go ahead and repair the property expecting to use funds from the estate. Following the rule laid down in the Daily case, the repairs on the house were properly disallowed because they all should have been paid for out of income, not corpus or estate funds.

The next item disallowed by the court was a check in the sum of $1,313.03 to Ole Overdahl for replacing the front of the post office and the Buttrey buildings. The repairs to the post office were made at the demand of the post office pursuant to certain post office regulations. Had the repairs or improvements not been made (by the uncontradicted testimony of McDonald), the post office would not have released the building. As it was they released and the rent was increased by $20 a month. It has been stated that when improvements are made by a life tenant or executor pursuant to some ordinance or statute, they are properly chargeable to the principal or corpus of the estate. In re Collins' Will, 187 Misc. 188, 61 N.Y.S. (2d) 488, 491; In re Whitney, 75 Misc. 610, 136 N.Y.S. 633; In re Clos's Estate, 110 Cal. 494, 42 Pac. 971; Restatement, Trusts section 233, page 681, Comment i, j and k. We can see little difference between post office regulations and city ordinances in applying the above rule.

It is also the general rule that if the life tenant comes into possession of the estate when it is in an untenantable condition, she is not burdened with putting it into tenantable condition, because the duty reposing on her is merely to save the property from ordinary waste during her life estate. In re Daily's Estate, supra; In re Collins' Will, supra; In re Estate of Roberts, supra; 128 A.L.R. 199, 255.

In the instant case the property was untenantable with the existing front, because without the improvement the lease would be terminated. Therefore, the general rule is that such improve-

ments made by an executor, not the life tenant, are properly chargeable out of corpus. See Estate of Roberts, supra; In re West's Estate, 175 Misc. 1044, 26 N.Y.S. (2d) 622; Restatement, Trusts section 233, Comment *l*.

Restatement, Trusts section 233, page 687, gives a succinct statement of the rule in Comment i of that work: "The cost of putting into tenantable repair premises which were not in such repair when received by the trustee, whether originally acquired by the trustee as part of the trust property at the time of the creation of the trust or subsequently acquired by him, is payable out of principal; but the cost of thereafter keeping the premises in repair is payable out of income."

The repairs on the Buttrey building also come under the Restatement rule (the premises being in an untenantable condition when the life tenant acquired her estate). By the uncontradicted testimony of McDonald the joists were rotting, the front falling off, windows loose in their frames and, in general, the entire front in a state of disrepair. To bolster his right to the expenditure and the charge to Protecting Principal is his statement, uncontradicted, that during Lindhardt's life he had promised Buttreys to repair the front of their building. It seems only equitable that the burden of making and paying for the improvements should be borne by the remaindermen not the life tenant. It follows that the court should not disallow the above item on McDonald's account.

McDonald paid out $1,274.04 for insurance on estate property while executor, charging its expense against the estate. The court disallowed all such items on his account; $77.50 of the above amount was insurance on an automobile. Being personalty, the car belonged to the nephews. The remainder was expended for fire insurance on the business property of the estate, and the policies were made payable to the estate.

In re Daily's Estate, supra, the court held that fire insurance on estate property, taken out by the life tenant, was properly apportionable between life tenant and remaindermen.

However, that case is not particularly in point because here the insurance was taken out by the executor in favor of the estate. Cases have distinguished between the two situations and, in the latter instance, have held the insurance is properly chargeable against the principal or corpus rather than income.

In Richardson v. McCloskey, Tex. Com. App., 276 S.W. 680, 684, this distinction was clearly illustrated. That case involved the same factual situation as in the instant one, objections being taken to the insurance charged against the estate. The court, in the Richardson case, recognized the fact that where the life tenant obtained the insurance, the rule was different, and said: "But here we have no such case. The policies were not taken out at the instance or specially for the benefit of the life tenant. They were taken out in favor of the estate by the legal representatives of the estate, and the proceeds therefore would belong to the estate, and no good reason is apparent why the estate should not be charged with the premiums. Obviously, such expenditures are not to be classed with those for current taxes and needed repairs. These latter are more nearly incidental to the estate of the life tenant. * * * we hold that where, as here, the representative of the estate does insure the assets of the estate against fire, he is entitled to be reimbursed for the premiums paid in an accounting of the affairs of the estate. See Holland v. Doke, 135 Ark. 372, 205 S.W. 648; Matter of Woods, 55 Misc. 181, 106 N.Y.S. 471; Nicholson v. Whitlock, 57 S.C. 36, 35 S.E. 412; 24 C.J. section 551, page 111."

The amounts disallowed by the court for fire insurance premiums were properly charged against the principal and out of corpus; therefore, we hold that McDonald should be credited with $1,196.54 in that regard.

The $77.50 paid for insurance on the automobile was properly charged against the estate. Although there was testimony to the effect the life tenant, not the nephews, used the car, nevertheless the proceeds of the insurance were payable to the estate and, therefore, it was properly charged with the

cost of the premium. The district court should grant McDonald credit for this item.

There was $450.76 paid out for other items which were properly charged against expense of income, or income, but were improperly paid out of estate funds. Those items were $21.84, license and tax on car while used by life tenant; $71.92, furnace repairs; $57, for a new vacuum cleaner; and $300, in royalties.

It is abundantly clear that McDonald had no right or authority to pay these items out of estate funds. These items should be paid only out of current income, and if the executor pays for them with funds from corpus and principal he may be surcharged for these items. All of the above items were properly disallowed.

We come now to the third issue raised on this appeal regarding the court's order on executor and attorney fees. As was indicated by the court order, not all of the evidence and facts affecting allowance or disallowance of this item had been obtained. Therefore, it was proper, in fact commendable, that the court refrained from ruling on this item until all the facts were before it. There was no error in holding as the court did with regard to executor fees.

The last issue raised is whether or not the executor should be charged with interest on the legacies (cash) because of the long delay in administering the estate. Respondents contend that interest should run on the legacies for the additional time they remained undistributed due to the delay and fault of the executor, McDonald. While the record clearly manifests the dilatory manner in which the legatees and devisees were treated by McDonald in administering the estate, to attempt to set down some workable rule with regard to charging him interest for the delay seems almost insurmountable. It is also apparent respondents recognized this difficulty because they failed to offer any evidence on what would constitute a reasonable time for distributing those assets. The trial court recognized the obstacle of applying any such rule

to the instant case and properly refrained from allowing the respondents' interest.

We have examined the remainder of the specifications of error and find them without merit. The case is remanded to the district court for further proceedings in accordance with this opinion.

MR. JUSTICES CASTLES, BOTTOMLY, and ANGSTMAN, concur.